The final argument this afternoon for this panel is in Appeal 2007-6001, Duncan v. Office of Compliance. The argument Does that criticism count as retaliation that allows me to file a lawsuit and go through this congressionally enacted process? Well, let's put it this way. I'm sure Judge Prost wouldn't do this, but would she include other language against you? Would she belittle you in front of co-workers? Would she dehumanize you in front of co-workers? Would she force you to do something that's not according to law? Would she say in the District of Columbia where there's an AIDS epidemic, remove your hard hat so you can bang your head against somebody else's head, break the skin and be exposed to blood? Where we have an AIDS epidemic. Now that to me, I don't think any judge would tell that to another judge in whatever comparable terms you would ask to do something that's against the law. What is the remedy that you're asking for? The remedy would be compensable damages under 207, under 1317A of the Act. What could they conceivably be? There was no injury? There was no physical injury? Yes, there was, sir. There was physical injury. Well, he got workman's compensation for that. There's physical, well, there's compensable injury if it chills you from going forward and acting under the law, which would be wearing the hard hat, subsequent to. That's a compensable injury. What is it, an emotional injury? It's emotional, but there was a physical injury. That had what sort of monetary value? It's not like he was carried off to the hospital and had an operation or had to have four office visits of a physician costing $100 each. Well, he did. There's no quantification here. He did, Your Honor. He did what? He was carried off to the hospital. He was off on sick leave for a physical injury, and he was going to the doctor three or four or five times, and he was diagnosed as suffering from PTSD. Now, if you say he does not have a compensable injury under the retaliatory statute, then you are taking away all rights and remedies of accountability. I'm just asking a question about whether there isn't some outer limit to what Congress intended when they used the concept and the statutory word retaliation. I don't think there's an outer limit based on the board of directors' analysis of the 207 of 1317A in the Britton case, Britton v. The Office of the Architect of the Capitol, that did not come to this court. And by that case, they made it a very broad retaliatory statute, and they said anything that was chilled, participation in federally protected activities, is retaliatory. Was there a monetary claim? Was there a number? Yes, ma'am. There were numbers talked about. Yes, ma'am. But there was no decision on the monetary aspect? That is correct. Well, it never reached that because of this, what I would term, ridiculous argument that there had been an intervening superior. And what was the amount of the claim? Do you remember? Oh, I don't remember, Your Honor. It would have had to have been determined at that time had we reached that. If you were to reverse and send it back to the board of directors or to the hearing officer, that could be easily determined. Well, I thought you said there were some known number of doctors. Known or no? Known. K-N-O-W-N. I'm sorry. Approximating what dollar total? Oh, maybe $2,000 or $2,500. I'm a little bit confused. I had understood that in the immediate aftermath of this momentary incident that your client continued to do the work with the other colleagues to try to lift, I guess, a fan motor into its location. It was a 550-pound replacement motor, yes, sir. It's a little hard to understand how he could have done that if he was so severely injured that he needed all this medical attention. He was taken to the doctor, to the hospital. Pardon? He was taken to the hospital by someone else in the architect of the capitol's office. And discharged relatively shortly thereafter. Yes. But I don't think at this juncture that is the issue, whether or not there are compensable damages. I think the issue is, as you said, is there an action for retaliation. Compensable damages or otherwise, I think, can be determined subsequent to. If you don't have accountability with the office of the architect, you are not going to have any accountability. You don't have to give us any lecture about cause and effect. We're trying to correctly interpret the command of Congress in a statute. The policy has already been determined by Congress. We're just trying to give it effect by giving a correct construction to certain statutory language. Well, I'm sorry if I feel that first things first. Let's just see if there's a cause of action and worry about the damages subsequent. As far as the board of directors is concerned, there's a cause of action. Whether or not at this juncture there's compensable damages is another question. And the cause of action, then, you're using the retaliation term? Yes, ma'am. 1317A. 2 U.S. Code 1317A. Okay. And the injury was... He was physically and emotionally assaulted and verbally assaulted and otherwise because he would not take off his hard hat in a situation where a hard hat was demanded. That's not what the OSHA inspector later said. He said a hard hat was not needed for this fan motor job, as I recall. I'm very sorry. The entire area is a hard hat. But that doesn't mean that every operation that goes on in that area requires a hard hat. That just means often there are things going on in that zone that does require a hard hat. Every construction site is like that. Now, let me try and explain to you, Your Honor. If a man's head becomes the instrument of the head knocker or the bumping hazard, and it happens five seconds from now, which is 6-11, and then at 6-06 the same head is the same instrument that becomes the bumping hazard, the head knocker, then a hard hat is required. If the human body becomes the instrument, then a hard hat is required. You don't tell the individual wearing the hard hat to take that off. So bare foreheads can hit bare foreheads. The OSHA Act says you have to act reasonably and for the health and safety of the worker. That includes the supervisor. You don't have take this hard hat off so we can whack our heads together. My understanding was that neither the supervisor nor any of the other workers on this motor replacement job were wearing a hard hat. That was their business. My client... No, you're saying it's required by OSHA. Either it's required for all of them to lift the motor or it isn't. They didn't have their hard hats with them. The other two people didn't get their hats. The question is whether there's an OSHA violation or not. You say that it's required to have a hard hat to do this job at this location, and therefore it has to follow from your argument, if it's true, that all of those other men were committing an OSHA violation because they didn't have their hard hats. And I would say that's correct. Under these circumstances, the four people who knew they could not lift the motor, they had no right lifting it up ten seconds later under the same conditions. Your opinion or mine probably doesn't have the authority of the OSHA inspectors. The OSHA inspectors said they had the wrong equipment. Let's accept that they should have been wearing hard hats. Yes, ma'am. Let's accept that your client's head, in the course of this very heavy device slipping out of their hands, did bump someone else and that it happened twice and the fellow got mad at him. Right. And responded. Right. That's why I keep asking, what is the injury, what is the damages? There's a certain amount of irrational behavior, perhaps, all around. At what point do we get to a big deal lawsuit? That's why I asked. Well, I kind of take issue with the fact that there's irrational behavior all around. The irrational behavior was on the part of the supervisor. The irrational behavior is not supposed to be violence in the workplace. That's what I meant. The supervisor, let's say the supervisor overreacted, and perhaps that's a very easy conclusion to draw, trying to understand what got us from this incident, this unpleasant incident. That's why I asked, who was hurt? What were the damages? What is the complaint? Does he want an apology? He wasn't demoted, apparently. He was reprimanded, but you don't need a material adverse. The reprimand, I gather, was removed from the file. Counsel, wait until the question is finished before you give the answer. I gather that the reprimand was removed from the file. Yes, ma'am. So that, as far as posterity is concerned, there's no reprimand. I'm trying to understand what this lawsuit is about. The lawsuit is about a person having the confidence that he can feel safe in the workplace, which is what the OSHA statute has implied. Is he going to get that from us? From here we can say, yes, your supervisor overreacted, he was rude, he was all of this. Now what? Now what? The man could be compensated for having worn his hard hat and having it jacked off his head. That's why I asked if you were asking for emotional injury, punitive damages, or what? We can't have punitive, I'm sorry, but yes, emotional and psychological and physical. What necessarily would you say under Title VII or otherwise would be available if a person used foul language and used the N-word or other words? We don't answer questions of counsel. I understand that, but it's the same injuries available under Title VII would be available to this client. You mean the same remedies? The same remedies, but the same injuries, if there's PTSD or if there's psychological, emotional, and physical, which are not necessarily, which are in addition to workers' compensation. Workers' compensation, if you do something, and this would be coming in front of you in another law action, but if you were to... Don't tell us about another case that isn't here where we don't have the record, we don't have opposing counsel. That's a mistake. We better just concentrate on this case. Now you say PTSD. Do we have a diagnosis of mental injury? Yes, there is a diagnosis in there. In where? Post-traumatic stress disorder. In the record where? It's either in the testimony or it's in the record, Your Honor. I'm sorry, I don't recall off the top of my head. But the man was out of work as a result of his emotional injuries. Not his physical injuries, but his emotional injuries for about six or eight weeks. Was he paid during that time? Partially, I believe. I don't recall off the top of my head. And there was a diagnosis that this incident caused PTSD? Yes, yes, ma'am. Caused six weeks of missed work? I believe so, yes. All right, well, let's hear from the government and then you'll have your rebuttal. Ms. Corcoran, I understand you're up first. Yes. Good afternoon. May it please the Court, my name is Kelsey Brown-Corcoran. I'm here on behalf of the Office of the Architect of the Capitol. This case involves an OSHA-based retaliation claim brought by a legislative branch employee under the Congressional Accountability Act. And because we're dealing with a claim for monetary damages from the United States here, it's very important to identify an unapprovalable waiver of sovereign immunity with regard to Mr. Duncan's claim. Mr. Duncan is relying on Section 207 of Part A of the Congressional Accountability Act, which prohibits retaliation for activities that are protected under Part A. Wait, wait, wait, where does it say under Part A? So I think if you look at the… I thought it said under this chapter. It does. Not Part A of this chapter, but presumably Part A and B and C and any other parts that are in this chapter. So the language is very much against your position, it seems to me. So you have to come up with something to say, well, that language seems to be against us, but actually we're right because of… and then you have to tell us something. That's exactly what I'm hoping to do. I don't have any arguments to offer you or any parsing of the specific language in 207, but what I'd like to do with the Court's permission is explain why the text and the structure and the substance of the Act as a whole demonstrate that that language is not the unequivocal waiver of sovereign immunity that Mr. Duncan needs to bring this claim. And the textual point is a simple one. We emphasize it in our brief, so I don't want to belabor it here. But it's essentially that… You better belabor it because I can't follow it at all. The statute as passed by Congress refers to anything else in this Act. When the codifiers changed it from an Act to a Chapter, they substituted the word Chapter. But in either case, it seems on its face to include everything that's in that text. Not in one fraction of the text, but in the entire text. The fundamental canon of construction is that you read the statute as a whole, and Part A's title expressly lists the federal laws which provisions of Part A apply. When you look at that in the context also of Part C… Part A's title is written by whom? That's a good question. I can tell you the answer. The codifiers, a bunch of staff lawyers, not the Congress of the United States, they passed the statute. Okay. The codifiers put in the titles and changed the numbers. Okay. And substituted a few words like Chapter for Act. Well, if you'll permit me to talk about then the structure and the substance of the Act as a whole, just for a few moments, and to explain why this individual cause of retaliation doesn't make sense in the context of OSHA or the other two laws that are covered in B&D. So the Act basically incorporates 11 federal laws and makes them applicable to the legislative branch of the federal government. And eight and a half of those laws fall under Part A. The half is the Americans with Disabilities Act. The employment discrimination portion of that is in Part A, and the public accommodations portion of it is in Part B. And all eight and a half of those laws are employee protection laws that provide employees with an individual cause of action against their employer. And in that context, it makes sense to also protect those employees from retaliation by their employers when they engage in a protected act under those statutes. And just to put aside the Warren Act, which was one of those eight and a half, the other seven and a half all have retaliation provisions in them, some of which are incorporated in the language or in the provisions in Part A, and some of them aren't. But what the retaliation provision is doing is making... They included more acts than they really should have, but we're stuck with what they included. We can't subtract out of the statute the two and a half that you say they put in there mistakenly. Well, let me talk about those two and a half, then, and explain what a significant extension of rights it would be to have an individual cause of action for retaliation in the context of those two and a half acts. It's important to look at Parts B, C, and D, because if the board's interpretation is adopted, there's a cause of action not only for retaliation under the OSHA, but also under the public accommodations portion of the ADA and under the federal service management legislation. Why does that matter to us? You may convince us that Congress made a mistake, and that Congress was wrong to do it, and it's terrible. So what? I mean, go tell it to the Hill. There's nothing we can do about that. If you look at the structure, it makes the language in Section 207 ambiguous, and it's unclear whether Congress intended to waive its sovereign immunity with regard to the acts at issue in B, C, and D. So isn't that kind of like having the tail wag the dog? You're saying the language is absolutely unequivocally clear,  No, I'm not saying the language is absolutely ambiguously clear. Well, it says under this chapter. Is there any ambiguity that the chapter they're referring to is Chapter 24? No, but when we're considering whether that provision is ambiguous, we have to look at the structure and substance of the act as a whole. We don't read just that provision. And the point is that if Congress had intended that provision to apply across the board, well, for one, it wouldn't have been in Part A. It would have been in Subchapter 1, which is the section that we're looking at. The Congress didn't cut it up. The codifiers cut it up into Part A and Part B and so on. Well, I think the subchapters are not Congress. Excuse my ignorance of legislative process. Look at the bill as the Congress enacted it. My understanding is that the subchapters are Congress's, but maybe I'm wrong about that. But to even put that aside, when we're looking at the substance of the 11 laws that are involved in this act, Part D involves the Federal Service Management Labor Relations Act. What is the point of this argument that you're making? That this is not retaliation? No, the board's decision should be vacated for lack of jurisdiction. In this case, the board incorrectly determined that the United States had waived its sovereign immunity with regard to Mr. Duncan's claim and the position of the Office of the Architect of the Capitol is that that was an error, that they should not have adjudicated this claim at all. You say that there was no jurisdiction for Mr. Duncan to take his complaint. Let's say, on the face of it, this was an assault, whether it was provoked or whatever else, he was assaulted. You're saying that this statute is not the place to go to remedy an assault by a supervisor because of something that happened on the job? Right. I'm saying there is no individual cause of action for an OSHA-based retaliation, and that's not true just with regard to this act. You're tying it to OSHA? You're saying that if it weren't for OSHA and the obligation to wear a hat, then you wouldn't have that argument? Well, no employee in the country has a right to bring an individual cause of action for retaliation under OSHA. Because Congress hasn't given them that. Right. But it did here. So it treated its own employees better than some private employees of General Electric or somebody. They're allowed to do that if they want to do that. It is a significant extension. Maybe so. Maybe it's huge. What do you want us to do about it? I would ask you to read the provision in the context of the substance of the act. But even if we agreed with you that Congress went beyond where they needed to go, extending rights to sue to their own employees that private employees or executive employees don't enjoy, what do you want us to do? Cancel the part of the act? I would ask again that Congress didn't intend to do that at all with the language of Section 207. They only intended that to apply to Part A. What do you suggest was supposed to happen if a congressional employee was retaliated against with respect to an apparent OSHA violation? The same thing that would happen if no employee in the country can bring an OSHA-based retaliation claim. So to the extent that that's a concern here, if Congress thought that there should be a cause of action for OSHA-based retaliation, it would have afforded that right to private employees and other federal employees. What? We don't construe the statute. The statute is clear, and we're supposed to say Congress couldn't have meant what it said because this is more than they've given other people? I'm really not understanding how we're supposed to get around the language, the act. I think you get around it by seeing its placement in Part A instead of being above in the section that discusses the general provisions. So are you telling us that Congress messed up, that they said act, but they really didn't mean act? Yeah. I think by placing it in Part A, they intended it to apply only to Part A. So they didn't really mean what they said when they said act. They meant something other than act. That's what you want us to write in an opinion. I would like the opinion to say that when you look at the act as a whole and you think about what each of the federal laws that's incorporated into the act do, it is unclear whether Congress actually intended to create a new cause of action for individuals in the context of the OSHA. What's unclear about it? The language is very clear. It may be wise, it may be unwise, but it's clear. And what choice do we have in the face of clear statutory language? Well, when we're talking about sovereign immunity... It doesn't make any difference. They're the people who can give away sovereign immunity. They have plenary power up there. But it has to be unequivocal when they do that. How could it be more unequivocal than to say all the provisions in this act, one of which is OSHA? Well, I think we've laid out our position. Just to point out also the significance of a decision affirming that interpretation is that there would be an individual cause of action for employees for retaliation for unfair labor practices under the bargaining portion of the SMLRA, which would allow individual employees to completely circumvent the judicatory and grievance process that Congress has put in place with regard to employee bargaining rights. And that is a very significant extension of rights. I don't doubt it for a minute. Well, if the Court does decide to reach the merits, I think the reasonableness of the Board's decision is evident on its face. I do want to emphasize that although there is a dissent here from Member Kamens, if you look at that dissent, it becomes clear that that dissent applies the wrong burden of proof and the wrong standard of review. That dissent is based on the assumption that if Mr. Duncan had mustered evidence to support his claim, that was sufficient to overturn the hearing officer's determination against him. And mustering evidence is the appropriate standard when you're in the context of summary judgment. But Mr. Duncan was afforded a three-day hearing, and his burden was to actually demonstrate that he had an actionable claim of retaliation. And he fell short of doing that for the hearing officer. Mustering evidence falls far short of what the Board needed in order to overturn the hearing officer's factual findings and falls far, far short of what this Court would need to find in order to overturn the Board's affirmance of the hearing officer. Thank you. Mr. Wachter, I think you are next. May it please the Court, I'm Bill Wachter with the Office of Compliance. On the jurisdictional issue, very briefly, it's not true that employees in the private sector do not have protection against retaliation under OSHA. They have a different form of retaliation. The Secretary of Labor has... But do you agree with us that it ought not to matter to us whether or not they have the right of action anywhere in the universe other than... This is true. But there is protection under OSHA itself. It's just that OSHA does not apply to the federal sector. So in the federal sector, Congress comes up with another solution. There was a bill before Congress that would have done essentially what the Justice Department has indicated they should have done if they wanted to protect these employees. There was a separate section with enumerated rights, and the section itself said that retaliation is prohibited with respect to the actions taken under these specific statutes. And over here was a provision in this draft that was much like what exists under OSHA now, where the General Counsel of the Office of Compliance would pursue a retaliation right on behalf of an employee. But that was scrapped. There now is no right. There is no right. The General Counsel does not have responsibility for prosecuting retaliation claims on behalf of employees. That was put over into Part A. And Part A was very clearly written to include all actions opposing practices under this Act. And the Lieberman-Grassley section-by-section analysis makes it clear that they were talking about... Where are you going with this? I think I'm getting lost. What's the final point here? The final point is that there is protection under OSHA, the OSHA law itself, in the private sector for employees who are victims of retaliation. The implication that I just heard was that no employee has the right of protection against retaliation under OSHA laws, and that is not true. But how does that relate to this case? You're saying that Mr. Duncan should have gone to some court rather than to the Office of Compliance or sought relief under this statute, or what? No, Your Honor, it was just by way of explaining the history of the way that the Congressional Accountability Act came about. But you disagree with your colleague, because your view is that the Board did have jurisdiction as the statute. Oh, certainly. The section 207 means what it says, and Congress said what it meant and means what it says. Okay, Mr. Walker, help me understand what's going on here. You represent the Office, right? Yes. Office of Compliance. Yes. That's part of the legislative branch of government. Yes. So you and everybody else at the Office of Compliance works for the Congress. Yes, that's correct. Okay. It's independent agency, Your Honor. The architect of the Capitol is also an officer and an employee of the Congress. He or she works for the same Congress. Yes. So you're both under the same ultimate authority. Yes. We are an independent agency. What? Independent agency within the legislative branch. Are you part of the Board, the Office of Compliance? Is that separate from the Board? The Board of Directors issues the decisions in the name of the Office of Compliance. Is the Board separate from the Office? No. The Board is part of the Office, within the Office. Yes. It's a tribunal within the Office. Exactly. They were the decision-making authority. Here's what I'm trying to understand. Why does the architect of the Capitol get to take a different view about the jurisdiction of the Board under a congressional statute from some other instrumentality of the Congress, namely the Office of Compliance? It's the way Congress set up the Congressional Accountability Act. An employee who is alleging a violation of his rights brings an action against an agency, an instrumentality of Congress, and the Office of Compliance adjudicates that, much in the way that the Labor Board does. I'm not concerned that, in a suit like this, the architect of the Capitol being the specific employer is the respondent. What I'm concerned about is, how does the architect of the Capitol get to say there's no jurisdiction? They're a respondent. They've been charged with a violation. You're saying they would come to the Board. They've been charged. The Board is the third party. They made this argument before the Board. Yes. The Board has no jurisdiction. It seems to me that that's perfectly kosher Well, here comes somebody from the Department of Justice, from the Civil Division, the appellate section, arguing on behalf of the architect of the Capitol that the Board had no jurisdiction here. Now, why isn't the Justice Department representing the Board, rather than the architect of the Capitol saying there is jurisdiction? Your Honor, I can't address myself to why the Justice Department is representing one of the architects in this case. I do not know the answer to that. The statute gives the Office of Compliance kind of independent authority to enforce decisions of the Board. Yes, correct. On the merits? Yes. On the jurisdictional issue, just very briefly, we should have addressed this a little more elaborately in the brief, but it's extremely important that the avenues of communication are kept open between the employees, the legislative employees, and the Office of Compliance. The Office of Compliance is a very small office. It has tremendous responsibilities throughout the Hill to enforce OSHA, and without the protection afforded to employees who come to the Office of Compliance with safety violations or allegations of safety practices. I don't think we can do anything with that. If the statute is properly interpreted as not covering OSHA, the fact that it would be beneficial if it did cover OSHA is nothing we can do anything about. Or conversely, if it does cover OSHA, even if that has arguably some bad effects, there's nothing we can do to change that either. The only question is, what did Congress mandate? What I'm trying to do is respond to the architect's argument that basically employees have no protection against retaliation. And it's very important. Not only do they have that protection under Section 207, but it's extremely important. We did not address the importance of this. Congress could not have intended that legislative employees have no protection against retaliation when they communicate with the Office of Compliance about safety violations. It's critically important. The Hill employees had the eyes and ears of this small office in the matter of enforcement of OSHA. On the merits, if I can move to the merits, it seems to me that we have beaten the motivation causation issue of death in our briefs. I'm not sure where to proceed with this, except if ever there were a case where they're conflicting inference arising from basically undisputed facts. This is a case where the board could surely infer that the reason that Perry removed the hat was not because of a silent, unexpressed protest or opposition to the hard hat policy of the architect, but to the fact that he'd just been hit again the second time in the head with the hard hat itself. That's an inference that the board could have drawn. The dissent would have drawn a different inference. But the board's inference is clearly supported by substantial evidence. And even if the court were to draw a different inference from these facts, the board's inference is entitled to affirmance. I'd like to address a couple of points that Mr. Lee made. The personal injury in this case was found by the board to have been the result of something that happened on September 4th. There was a lifting incident that went awry, and there was some injury to the neck or back of Mr. Duncan. And when he went to the doctor on the following Monday, what the doctor found was that he had been injured. He had a neck strain. It had nothing to do with the hat being removed. There's no evidence in the record to support a finding that when the hat was removed was the cause of any injury. The whole remedy issue that we've been discussing, the board did not address because it dismissed the complaint based on the finding that the real reason that the hat was taken off his head was because he'd just been hit in the head for the second time. There's also been some discussion of the Malinger Report, the Office of Compliance was asked to investigate the September 5th incident. An investigator went out on behalf of the Office of Compliance, investigated and made a report, which he submitted then to the then General Counsel of the Office of Compliance. The investigation was requested based on the hat-removing incident. The report, the Malinger Report, we'll call it the Malinger Report, did not find any hard hat violations. He did not find that Perry had violated any OSHA rule, either when he asked Mr. Duncan to remove his hat or when he physically removed it a few moments later. He did not imply even that there is a hard and fast rule that hard hats have to be worn without exception whenever you're in a hard hat area. Is that relevant? Does that make any difference in this claim as to who was right as to whether or not hard hats were required? Well, it bears on the question of motivation to the extent that Mr. Lee and Mr. Duncan have argued that this was a clear case of the architect not complying with OSHA requirements. Our response is that there were no OSHA requirements that were violated in this case. There has to be a rule of reason. Even in a hard hat area, there are occasions and even the OSHA inspector for the office of compliance agreed that there are times when hard hats are not required to be worn even in a hard hat area. There have to be exceptions to that. Are you suggesting that there can never be prohibited retaliation unless there's an actual violation of one of these statutes? Certainly not. If I'm the worker and I think there's a violation, then it's at least halfway reasonable that I think so. Even though it turns out to be wrong, if Judge Prost is my supervisor and she demotes me, then that would count as retaliation even though, in fact, there was no OSHA violation. That's correct. So the gravamen of the offense is not the violation of Title VII or OSHA or anything else. The heart of the offense is the retaliation. Yes, that's correct. What I'm responding to is the lengthy argument in the reply brief that there are OSHA violations all over the place and there were no OSHA violations. There may have been a perceived concern on the part of Mr. Duncan, but there were no OSHA violations in any event. His perception isn't ridiculous. There was a sign there that said hard hat area or equivalent language. It's not like he made it up out of thin air. That's correct, Your Honor. But in the small area where they were actually doing the lifting, the architect's safety director, who was also in charge of OSHA enforcement, went up to that room, to that attic, with three members of that crew, and concluded that in that small area where they were actually doing the lifting, where the removal of the hard hat and the contact actually occurred, that there were no overhead bump hazards. I still don't understand what this has to do with whether the supervisor was or was not entitled to forcibly remove the hat and throw it on the ground or whatever he did. And we're told put Mr. Duncan into a traumatic frame of mind. Well, he would be somewhat less justified if, in fact, it was clear under OSHA law that Mr. Duncan was entitled to be wearing that hat, even in those circumstances. So are you saying that in order to review this case, it's necessary to decide who was or was not required to wear a hard hat? No, I don't believe so, Your Honor, because the question is, what was Perry's motive in removing the hat? Well, it's clear. It was hit on the head with it twice, and he got mad. Yes. Probably justifiably so. Isn't that the incident? Isn't that all there is to the incident? It's a serious incident, if you consider what we're told were the emotional and physical consequences. But I have yet to hear very much discussion of what seems to be what this case is about, unless it's about something that we aren't being told. You're right, Your Honor. The dismissal of the complaint was appropriate, regardless of whether there was actually a hard hat violation at that moment. But there's been so much made of the fact that the OSHA rules are hard and fast in a hard hat area. Your case, I think, essentially is Duncan failed to prove that the hard hat removal caused any injury. Yes, that's right. Any injury. So that other things caused the neck injury or the emotional injury or whatever else may happen. And that one way to see that he failed to prove that the hard hat removal caused any injury is that there was an intervening cause, the irritation of Mr. Perry when he got bumped in the head a second time. Yes, Mr. Perry did not. But even aside from the intervening cause, it seems to me that your position is failure of proof on the part of plaintiff Duncan, because he proved no connection at all between any injury of any kind, suffered emotional, physical, loss of employment, days out of work, you name it, and the hard hat removal by Perry. Yes. Well, if that's your case, you don't need to be laboring. Nothing happened when he embarked upon his alleged opposition to the hard hat policy. Nothing happened. The supervisor went ahead with the attempt to lift the motor. It was only when the heads hit a second time when he bent it over that the hat was removed. All right, well, we've given you more time than allotted, so we'll hear now from Mr. Leib and his two and a half minutes of rebuttal. If Your Honor please, I would submit on the argument dealing with the private right of action, cause of action, and retaliation. I think we've dealt with that. I would state that there is a policy in the Architect of the Capitol, July 27, 2000, dealing with enforcement of personal protective equipment, and it states, employees are expected to work and behave in a manner consistent with AOC compliance with the OSHA health and safety standards, and to wear safety clothing or equipment as required. That's for supervisors. That is for employee co-workers. As required. The man was whacked on the head. You know, the point of reference is the supervisor from the Office of the Architect and the respondent, AOC. The point of reference with my client, Mr. Duncan, is not only Mr. Duncan, but OSHA. He was responding to OSHA. He did not wish to get injured. It was a space, let's say, in front of from here to where your bench is. If something had happened and the 550-pound motor fell on somebody's leg and they all fell together, his head, which is covered, bangs up against your bench. Everybody else's head. The fact that there's no head knocker directly above where they were working is not of significance. The fact is that it's dangerous. It happened one time. It happened immediately 10 seconds after that. And then the hat is jerked off his head. When people were assaulted in Chicago in 1968 for wearing an American flag as underwear or for burning an American flag, they did not need the police officer saying, I'm arresting you or I'm depriving you of your rights because I don't like the fact that you're wearing the flag upside down or you're wearing the clothing. They arrested him because they didn't like what he was doing and where the clothing was. The same thing with the hard hat. It was an opposition. He wanted his own safety. He was complying with the architect's policy. He was complying with OSHA policy with what he believed. He is the person, because of his strict acknowledgement and strict compliance with OSHA, that was charged with putting hard hat signs all over the Capitol. Now they say, you might as well shoot yourself in the leg because this person, this supervisor, says, no, we're going to do it this way, even though after one bump, the body becomes the head-knocker. The body becomes the bumping hazard, not the overhead, not the pipes jutting out anywhere else. The man is entitled under OSHA, entitled to have the safety equipment and to wear it without being assaulted. All right. We thank all three counsel. We'll take the appeal under advisement.